# 24-1914-cv

## United States Court of Appeals

### *for the*

### Second Circuit

SARI E. NEWMAN,

*Plaintiff-Appellant,*

— v. —

JPMORGAN CHASE BANK, N.A.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT

DANIEL A. SCHLANGER
EVAN S. ROTHFARB
SCHLANGER LAW GROUP LLP
*Attorneys for Plaintiff-Appellant*
60 East 42nd Street, 46th Floor
New York, New York 10165
(212) 500-6114

CP COUNSEL PRESS     (800) 4-APPEAL • (334918)

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................... ii

INTRODUCTION ................................................................................. 1

JURISDICTIONAL STATEMENT ...................................................... 4

STATEMENT OF THE ISSUES............................................................ 4

STATEMENT OF THE CASE ............................................................... 5

   I.   STATUTORY AND REGULATORY BACKGROUND ............................ 5

   II.  FACTUAL BACKGROUND.......................................................... 6

     A.  The Unauthorized Transactions ......................................... 6

     B.  The Lawsuit and Chase's Reimbursements of the Unauthorized Transactions ............................................... 10

     C.  The Decision of the District Court .................................... 11

STANDARDS OF REVIEW ................................................................ 12

SUMMARY OF ARGUMENT ............................................................ 13

ARGUMENT ..................................................................................... 17

   I.  The Electronic Fund Transfer Act Consumer Liability Cap Is Not Eviscerated by the Bona Fide Error Defense. ............................. 17

     A. The EFTA Limits Consumer Liability for Unauthorized Transfers and Provides Consumers with a Remedial Cause of Action If a Financial Institution Fails to Provide Reimbursements for Their Losses ........................................ 18

     B. The District Court Erred in Holding Error Resolution Protocols Vitiated the EFTA Consumer Liability Cap and Constituted a Bona Fide Error Defense to Reimbursement Liability......................................................................... 25

   II. Civil Liability for Actual Damages in the EFTA Includes Emotional Damages. ......................................................... 36

CONCLUSION .................................................................................. 43

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aikens v. Portfolio Recovery Assocs., LLC*, 716 F. App'x 37 (2d Cir. 2017)................................................................................23

*Almon v. Conduent Bus. Servs., LLC*, Case No. SA-19-CV-01075-XR, 2022 U.S. Dist. LEXIS 55025 (W.D. Tex. Mar. 25, 2022)................................................................................40

*Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72 (2d Cir. 2016) ..............................5

*Bazarganfard v. Club 360 LLC*, No. 2:21-cv-02272-CBM-(PLAx), 2023 U.S. Dist. LEXIS 60283 (C.D. Cal. Apr. 4, 2023)..............................................................................26, 27

*Boecherer v. Burling Bank*, No. 08 C 1332, 2009 U.S. Dist. LEXIS 111983 (N.D. Ill. Dec. 1, 2009) ..............................................29

*Burnstein v. Saks Fifth Ave. & Co.*, 208 F. Supp. 2d 765 (E.D. Mich. 2002) ................................................................................38

*Butler v. Sterling, Inc.*, No. 98-3223, 2000 U.S. App. LEXIS 6419 (6th Cir. Mar. 31, 2000)................................................38

*Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469 (2d Cir. 1995)................................................................................37

*Cifaldo v. BNY Mellon Inv. Servicing Tr. Co.*, No. 2:17-cv-00842-JAD-NJK, 2017 U.S. Dist. LEXIS 79079 (D. Nev. May 23, 2017)................................................................................35

*Clemmer v. Key Bank Nat'l Ass'n*, 539 F.3d 349 (6th Cir. 2008) ..........................37

*Cobb v. PayLease LLC*, 34 F. Supp. 3d 976 (D. Minn. 2014) ................................25

*Cohen v. Capital One, N.A.*, 921 F. Supp. 2d 107 (S.D.N.Y. 2013)................................................................................30

*Daye v. Cmty. Fin. Serv. Ctrs.*, 233 F. Supp. 3d 946 (D.N.M. 2017)................................................................................28

*Drager v. Bridgeview Bank*, No. 1:10-cv-7585, 2011 U.S. Dist. LEXIS 62861 (N.D. Ill. June 13, 2011) ..............................................29

*Drager v. Bridgeview Bank*, No. 1:10-cv-7585, 2012 U.S. Dist. LEXIS 132584 (N.D. Ill. Sep. 17, 2012)................................................30

*Edwards v. Wells Fargo & Co.*, 606 F.3d 555 (9th Cir. 2010) ................................37

*Exarhos v. JPMorgan Chase Bank, N.A.*, No. 20 C 7754, 2021
U.S. Dist. LEXIS 135292 (N.D. Ill. July 20, 2021) ...........................................23

*Fleet Mortg. Grp. v. Kaneb*, 196 F.3d 265 (1st Cir. 1999) ......................................39

*Green v. Capital One, N.A.*, 557 F. Supp. 3d 441 (S.D.N.Y.
2021) .........................................................................................................................34

*Gunter v. United Fed. Credit Union*, No. 3:15-cv-00483-MMD-
WGC, 2017 U.S. Dist. LEXIS 157243 (D. Nev. Sep. 25,
2017) ...........................................................................................................................5

*Hatemi v. M&T Bank Corp.*, No. 13-CV-1103S, 2014 U.S. Dist.
LEXIS 76776 (W.D.N.Y. June 3, 2014) .................................................................25

*Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42 (2d Cir.
2018) .........................................................................................................................13

*In re Cardtronics ATM Fee Notice Litig.*, 874 F. Supp. 2d 916
(S.D. Cal. 2012) ........................................................................................................30

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich L.P.A.*,
559 U.S. 573 (2010) ............................................................................................25, 26

*Johnson v. Eaton*, 80 F.3d 148 (5th Cir. 1996) .......................................................38

*Johnson v. Rustad & Assocs., Inc.*, No. 12-CV-0926 (PJS/SER),
2012 U.S. Dist. LEXIS 170086 (D. Minn. Nov. 29, 2012) ....................................30

*Kelsey v. Pitsch Cos.*, No. 1:13-cv-1296, 2015 U.S. Dist.
LEXIS 73441 (W.D. Mich. June 8, 2015) ..............................................................28

*Kinder v. United Bancorp, Inc.*, No. 11-CV-10440, 2012 U.S.
Dist. LEXIS 140567 (E.D. Mich. Sep. 28, 2012) ...................................................29

*Kohli v. Indep. Recovery Res., Inc.*, No. 17-CV-3154 (RLM),
2021 U.S. Dist. LEXIS 260674 (E.D.N.Y. Nov. 29, 2021) ...................................38

*L.S. v. Webloyalty.com, Inc.*, 954 F.3d 110 (2d Cir. 2020) ....................................13

*Levy v. Law Offices of J. Henry Nierman*, No. 17-cv-4022
(NSR), 2024 U.S. Dist. LEXIS 91124 (S.D.N.Y. May 20,
2024) .........................................................................................................................38

*McLean v. GMAC Mortg. Corp.*, 398 F. App'x 467 (11th Cir.
2010) .........................................................................................................................39

*Mich. First Credit Union v. T-Mobile USA, Inc.*, 108 F.4th 421
(6th Cir. 2024) ..........................................................................................................19

*Minnifield v. Johnson & Freedman, LLC*, 448 F. App'x 914
(11th Cir. 2011) ........................................................................................................37

iii

*N.Y. Legal Assistance Grp. v. Bd. of Immigr. Appeals*, 987 F.3d
207 (2d Cir. 2021) ...................................................................................26

*Nelipa v. TD Bank, N.A.*, No. 21-CV-1092, 2024 U.S. Dist.
LEXIS 106766 (E.D.N.Y. June 17, 2024)........................................5, 24

*Okocha v. HSBC Bank, USA, N.A.*, 700 F. Supp. 2d 369
(S.D.N.Y. 2010).................................................................................15, 39

*Ramirez v. LTD Fin. Servs., L.P.*, No. 1:19-CV-2575-CAP,
2021 U.S. Dist. LEXIS 262043 (N.D. Ga. Sep. 2, 2021)...............31, 32

*Roach v. Morse*, 440 F.3d 53 (2d Cir. 2006) ..........................................13

*Rouse v. Law Offices of Rory Clark*, 603 F.3d 699 (9th Cir.
2010).........................................................................................................19

*Schochet v. Bank of Am., N.A.*, Index No. 652058/2013, 2016
N.Y. Misc. LEXIS 64, 2016 NY Slip Op 30038(U) (Sup. Ct.,
N.Y. Cnty. 2016) ......................................................................................30

*Sherrill v. Racetrac Petroleum*, No. 4:10-CV-690, 2012 U.S.
Dist. LEXIS 204072 (E.D. Tex. Sep. 30, 2012)......................................31

*Simone v. M & M Fitness LLC*, 2017 U.S. Dist. LEXIS 54480
(D. Ariz. Apr. 10, 2017) ..........................................................................27

*Singer v. EIntelligence, Inc.*, 55 F. Supp. 3d 1043 (N.D. Ill.
2014).........................................................................................................30

*Smith v. City of Jackson*, 544 U.S. 228 (2005) .......................................27

*Sparkman v. Comerica Bank*, No. 23-cv-02028-DMR, 2023
U.S. Dist. LEXIS 136485 (N.D. Cal. Aug. 4, 2023)...............................34

*Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403 (2d Cir. 2022)............26

*Stevens v. GFC Lending, LLC*, 138 F. Supp. 3d 1345 (N.D. Ala.
2015).........................................................................................................38

*Trang v. JP Morgan Chase Bank, N.A.*, No. 3:22-cv-01744-HZ,
2023 U.S. Dist. LEXIS 167200 (D. Or. Sep. 19, 2023) ..........................34

*United States v. Goldblatt*, 813 F.2d 619 (3d Cir. 1987)........................19

*Washington v. USAA Fed. Sav. Bank*, Civil Action No. 3:19-cv-
00767-MGL, 2020 U.S. Dist. LEXIS 269553 (D.S.C. July 29,
2020).........................................................................................................28

*Wheeler v. Fitness Formula, Ltd.*, No. 18 CV 582, 2018 U.S.
Dist. LEXIS 194320 (N.D. Ill. Nov. 14, 2018) ................................32, 33

*Wheeler v. Fitness Formula, Ltd.*, No. 18-cv-00582, 2020 U.S.
    Dist. LEXIS 55346 (N.D. Ill. Mar. 30, 2020) .......................................33
*Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579 (9th Cir.
    2021) .......................................................................................................23

## Statutes

15 U.S.C. § 1601 ..........................................................................................18
15 U.S.C. § 1640(c) (1976) ..........................................................................26
15 U.S.C. § 1640(c) (2024) ..........................................................................26
15 U.S.C. § 1692k .........................................................................................26
15 U.S.C. § 1693 .............................................................................................5
15 U.S.C. § 1693a .........................................................................................34
15 U.S.C. § 1693b ...................................................................................5, 19
15 U.S.C. § 1693f ...............................................................................2, 10, 34
15 U.S.C. § 1693g ................................................................................. passim
15 U.S.C. § 1693m ............................................................................... passim
15 U.S.C. §§ 1601-1693r .......................................................................15, 37
28 U.S.C. § 1291 .............................................................................................4
28 U.S.C. § 1331 .............................................................................................4
92 Stat. 3641 (1978) .....................................................................................18
Pub. L. No. 95-630 § 2001 ...........................................................................18
UCC § 4A-108 ...............................................................................................18
UCC § 4A-202 ...............................................................................................18

## Regulations

12 C.F.R. § 1005 .............................................................................................6
12 C.F.R. § 1005.6 ............................................................................... passim

## **INTRODUCTION**

Following the emergence of consumer electronic banking, Congress enacted the Electronic Fund Transfer Act (EFTA) in 1978.  The principal purpose of the law was the protection of individual consumer rights.  To that end, the EFTA created a defined liability scheme that set clear rules regarding who bears the loss – the consumer or the financial institution – in the event that there are unauthorized transactions on consumer accounts.

Specifically, section 1693g of the EFTA requires financial institutions to reimburse consumers for unauthorized transactions.  To the extent institutions fail in their reimbursement obligations, the EFTA ensures that consumers are made whole through civil recoveries that include their actual damages, as well as statutory damages.  Treble damages are available under specific conditions.  The prevailing consumer is also entitled to costs and attorney's fees.

Plaintiff/Appellant Sari E. Newman ("Appellant") is a 70-year-old widow who had deposited her life savings in personal accounts with Defendant/Appellee JPMorgan Chase Bank, N.A. ("Chase").  Through a series of unauthorized ACH withdrawals from Appellant's accounts between January 19, 2022, and April 18, 2022, Chase permitted $46,975 to be stolen from her.  Appellant disputed these transactions with Chase in late April 2022 to no avail.  In June 2022, Chase denied her claims for reimbursement (less $14,000 that Chase was able to recover from the

1

unauthorized transferee's financial institution). Only after commencement of this lawsuit did Chase tacitly admit that Appellant had not authorized the transactions and carried through on its obligation to reimburse her for her pecuniary losses, but not for the other damages she had inured.

Appellant commenced this action seeking damages for Chase's failure to provide reimbursement of the unauthorized transactions in her account pursuant to 15 U.S.C. § 1693g, and for Chase's failures in complying with the error resolution provisions set forth in 15 U.S.C. § 1693f.[1] Following discovery, Chase moved for summary judgment seeking dismissal of all claims, which was granted by the District Court.

The District Court made several errors in its disposition, however.

Most notably, the District Court incorrectly held that Chase had a bona fide error defense to each of the claims Appellant asserted, concluding that Chase's error resolution procedures absolved it of all EFTA liability. In so holding, the District Court adopted a novel interpretation of the bona fide error defense that effectively nullifies the consumer-banking relationship scheme enacted by the EFTA. The bona fide error defense is limited to largely clerical mistakes, not wholesale failures to comply with statutory dictates. But under the District Court's decision, the mere

---

[1] Appellant does not appeal the District Court's dismissal of her claims pursuant 15 U.S.C. § 1693f.

adoption of error resolution procedures provides blanket immunity to financial institutions from their obligation to reimburse consumer accounts for unauthorized transfers.

The District Court's analysis is erroneous because it conflates Chase's obligation to investigate and resolve account errors—under § 1693f—with its obligation to reimburse consumers for unauthorized transactions under § 1693g. Indeed, in its decision dismissing all claims, the District Court did not cite § 1693g, which strictly caps consumer liability for unauthorized transfers. *See* 15 U.S.C. § 1693g(e). Nor did the District Court take cognizance that Chase has the burden of establishing that the transfers were authorized. 15 U.S.C. § 1693g(b).

In addition, the District Court incorrectly held that Appellant's claims for actual damages had been rendered moot by Chase's post-lawsuit reimbursement of the stolen funds, which effectively dismissed her claims for emotional distress *sua sponte*.

However, as with other subparts of the Consumer Credit Protection Act and similar consumer protection statutes, the meaning of 'actual damages' under the EFTA includes not only out-of-pocket losses, but also emotional distress damages resulting from violations.

Because the District Court's Opinion and Order granting summary judgment rested on multiple legal errors, it should be reversed.

3

## JURISDICTIONAL STATEMENT

The District Court had subject-matter jurisdiction under 15 U.S.C. § 1693m and 28 U.S.C. § 1331. The District Court entered final judgment in favor of Chase on June 28, 2024. Appellant timely appealed the judgment on July 15, 2024. A10-11.[2] This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the District Court erred in holding that a bona fide error defense asserted under 15 U.S.C. § 1693m(c) of the Electronic Fund Transfer Act (EFTA) premised upon bank procedures for investigations of errors insulates a bank from liability pursuant to 15 U.S.C. § 1693g, a provision of the EFTA which strictly caps consumer liability for unauthorized transactions.

2. Whether the District Court erred in finding Appellant's claim for actual damages pursuant to 15 U.S.C. § 1693(m)(a)(1) was moot where she pled both out-of-pocket and emotional damages and the defendant reimbursed her after the suit was filed only in the amount of the unauthorized charges.

---

[2] References to the record on appeal are as follows:
- Appendix ("A")
- Sealed Appendix ("SA")
- Special Appendix ("SPA")

## STATEMENT OF THE CASE

### I. STATUTORY AND REGULATORY BACKGROUND

The EFTA was enacted to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693. Its "primary objective" is "the provision of individual consumer rights." *Id*.

The EFTA, like other consumer statutes, is to be construed liberally in order to achieve its remedial and protective purpose. *See Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016) ("consumer protection statute[s]" must be construed "in liberal fashion [to achieve] the underlying Congressional purpose."); *Gunter v. United Fed. Credit Union*, No. 3:15-cv-00483-MMD-WGC, 2017 U.S. Dist. LEXIS 157243, at *7 (D. Nev. Sep. 25, 2017) ("The EFTA is a "remedial statute accorded a broad, liberal construction in favor of the consumer.").

The EFTA confers rule-making authority upon the Consumer Financial Protection Bureau to "prescribe regulations to carry out the purposes" of the statute." 15 U.S.C. § 1693b(a). "The EFTA is implemented through Regulation E, codified at 12 C.F.R. § 1005 *et seq.*, which includes not only the regulations but also official staff interpretations of those regulations ('Official Interpretations')." *Nelipa v. TD Bank, N.A.*, No. 21-CV-1092, 2024 U.S. Dist. LEXIS 106766, at *32-33 (E.D.N.Y. June 17, 2024) (cleaned up).

## II. FACTUAL BACKGROUND

### A. The Unauthorized Transactions

Appellant is a 70-year-old widow. A636. Following the death of her husband in 2018, Appellant received the proceeds of his life insurance policy, which she used to purchase her home. A636. She deposited the remainder of the proceeds, constituting her life savings, into a savings account at Chase. SPA2; A636.

Between January 19, 2022, and April 18, 2022, Chase permitted 25 ACH unauthorized withdrawals from Appellant's account without her authorization in a total amount of $46,975. SPA2; A637. The withdrawals were generally $2,000 or less. A405; A410; A417; A 422-23. Chase sent the withdrawals to an entity known as Aspiration Financial, LLC ("Aspiration"). SPA2; A637.[3] Appellant has never done business or otherwise had a relationship with Aspiration, did not receive any goods, services or other benefits from Aspiration, did not authorize Aspiration to take any action whatsoever, and did not take any action to send Aspiration any funds or open any account at Aspiration (*i.e.* this is a completely fraudulent series of transfers into a fraudulent account). A37-39; A76; A629; A632-33.

Appellant did not regularly check the balance of her savings account at Chase, believing the money to be her emergency lifeline, and only infrequently made any

---

[3] On July 1, 2022, Aspiration closed the account that it had opened in Appellant's name due to identity theft. A76; A629.

withdrawals from it. A636-37. However, on April 27, 2022, she noticed that the balance in her Chase savings account was unusually low, discovered the unauthorized charges, and notified Chase that she disputed the 25 unauthorized transfers that Chase had sent to Aspiration. A626; A637.

On April 27, 2022, Chase issued a letter to Appellant stating it would "not be crediting certain transactions" that had been disputed by her, including two transactions on April 13, 2022, each for $2,000, and two transactions on April 18, 2022, each again for $2,000. A543 and A545. In total, these transactions were equal to $8,000.

The letter indicated that Chase held Appellant "responsible for any transactions that occur more than 60 days after we send the first statement on which these transactions appear, which was 01/31/2022." A543; A637. However, Chase did not send notice to Appellant that her January 2022 statement was ready for her review until at earliest February 3, 2022, when it contends it sent an email alerting Appellant that her statement was available to review. A578. Further, Chase did not confirm Appellant received notification that the January 2022 statement was available (*i.e.*, Chase provided no record confirming whether its email notification was in fact delivered to Appellant or had been opened by Appellant).

On April 28, 2022, Chase opened a new account for Appellant. A627. On May 4, 2022, Chase provisionally credited the new account with $38,975 (for 21 of

7

the 25 unauthorized transactions), *i.e.* for all transactions other than the $8,000 worth of transactions that Chase maintained occurred after the 60-day window. A553; A627-28.

After Appellant reported the unauthorized transactions, Chase commenced an investigation in accordance with its error resolution procedures. A627. Chase initially determined that it could not prove that Appellant had authorized the transfers to Aspiration. SPA2; A628; SA5. However, on May 11, 2022, Chase received a fax from Coastal Community Bank (sent on behalf of Aspiration), which enclosed a Consumer ACH Authorization and Agreement (the "Authorization"). SPA2; A69-70; A628. The Authorization contained a purported electronic signature in Appellant's name dated January 15, 2022, with no personal identifiable information associated with the signatory or even an email address associated with the signatory's e-sign account. A69-70. Relying on this Authorization, Chase concluded that Appellant had authorized the Aspiration transactions. SA2; A628; SA6.

Chase subsequently admitted, however, that this lone, unverified e-signature was insufficient to establish that Appellant had in fact authorized the transfers to Aspiration. SA6 ("the specialist found only one of multiple criteria [to verify authorization] – an electronic signature for Ms. Newman – and denied the claim

8

based on that lone criterion. This result fell short of Chase's expectation for reviewing a customer's claim that ACH transactions are authorized.").

On June 8, 2022, Chase issued a letter to Appellant withdrawing the majority of the temporary credits. A566. In the letter, Chase indicated that it had "found that the transaction(s) was processed according to the information you provided or was authorized" and it would reverse $24,975 of the provisional credit for certain transactions between January 19, 2022, and March 4, 2022. A566; A628.[4]

On June 9, 2022, Chase confirmed that $14,000 of the provisional credits in Appellant's account was now permanent. A560-63. Chase attributed the $14,000 credits to certain transactions between March 4, 2022, and April 5, 2022. SPA2; A562.[5] However, Appellant disputed Chase's attribution of those funds to those transactions. A634.[6]

---

[4] The letter did not explain why certain disputed transactions within that period were not being reversed. A566. In particular, one $2,000 transfer to Aspiration on March 4, 2022, was attributed to Appellant as authorized, while another identical transaction that same day was deemed unauthorized. A638.

[5] Chase made no determination whether the disputed Aspiration transfers had been authorized, as required by the EFTA, 15 U.S.C. § 1693g(b). A302.

[6] It is undisputed that Chase received $14,000 from Aspiration. However, the records of this case from Aspiration do not appear to attribute these funds to any specific transactions.

9

Chase removed $24,495 in provisional credits funds from Appellant's account on June 16, 2022. SA6.[7] After this money was taken from her, Appellant became suicidal, felt helpless and despondent, was not able to sleep, and lost 20 pounds. A638. She then sought mental health treatment for the first time in her life. A638.

Ultimately, before Appellant commenced this action, Chase had reimbursed only $14,000 out of the $46,975 that had been debited from her accounts, all of which had come from Aspiration.

### B. The Lawsuit and Chase's Reimbursements of the Unauthorized Transactions

On August 15, 2022, Appellant initiated this action in the United States District Court for the Southern District of New York and the matter was assigned to the Honorable Jesse M. Furman, U.S. District Judge. SPA3; A1; A12. The Complaint, as well as the subsequently filed Amended Complaint, asserted that Chase had violated both the consumer liability cap (15 U.S.C. § 1693g) and error resolution (15 U.S.C. § 1693f) provisions of the EFTA. A22; A45-46. The Amended Complaint sought actual damages (including reimbursement of the

---

[7] To better understand what had taken place, Appellant contacted Chase and requested the materials it relied on to deny her disputes. A638. On July 18, 2022, Chase issued a response to Appellant, saying her "[c]laim was denied based on information we had available to us in the investigation; Your claim was denied based on a review of account activity." A564. However, Chase solely provided the Authorization from Aspiration in its response. A638.

unauthorized transactions and emotional distress damages), statutory damages, treble damages, and attorney's fees and costs.  A46.

Thereafter, during the litigation, without prompting from Appellant, Chase unilaterally issued credits to Appellant's account.  Specifically, on November 22, 2022, Chase credited Appellant's account with $24,975 (plus $3.14 in interest). SPA3; A467; SA6.  On January 1, 2022, Chase issued a letter to Appellant stating that the credits were made permanent as of that date and confirming that the transactions Appellant disputed were unauthorized.  A640-41 ("We researched the transaction you reported and agree it was incorrect. . . . The temporary credit we provided is now permanent . . . .").

On February 3, 2023, Chase credited Appellant's account with an additional permanent credit of $8,000 (plus $1.21 in interest), purportedly "as a gesture of goodwill[.]" SPA3; A630.  SA6.

In total, after filing this lawsuit, Chase credited Appellant's account with $32,975 (plus $4.35 in interest), an amount which it had refused to pay until it faced legal jeopardy.

### C. The Decision of the District Court

Following the close of discovery in the District Court, Chase moved for summary judgment.  SPA3; A8.  In its motion, Chase argued, *inter alia*, that the

procedures for error resolution it had adopted and followed provided it with a bona fide error defense to liability. SA79-101.

The District Court granted Chase's motion based on the bona fide error defense, dismissing all EFTA claims Appellant had asserted in this action. SPA11. In its Opinion and Order, the District Court held the defense absolved Chase of any liability for the alleged EFTA violations in this action. SPA10-11. According to the District Court, Chase need only follow error resolution investigation procedures to avoid reimbursement liability for unauthorized transfers. SPA6-11. Notably, the District Court's decision does not reference 15 U.S.C. § 1693g, the reimbursement provision of the EFTA.

The District Court also held that Appellant's claims for 'actual damages' had been rendered moot by the credits that had been made to the account during the litigation. SPA5. However, the decision did not address Appellant's claim for emotional distress damages that had been set forth in Amended Complaint and referenced in opposition to Chase's motion for summary judgment. SPA5; A46; A634; A638.

## STANDARDS OF REVIEW

This Court "review[s] a grant of summary judgment de novo, examining the evidence in the light most favorable to, and drawing all inferences in favor of, the non-movant." *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 50 (2d Cir.

2018). Moreover, this Court "review[s] questions of statutory interpretation *de novo.*" *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006). *L.S. v. Webloyalty.com, Inc.*, 954 F.3d 110, 114 (2d Cir. 2020).

## SUMMARY OF ARGUMENT

**I.** "The primary objective [of the EFTA] . . . is the provision of individual consumer rights." 15 U.S.C. § 1693(b). Here, the District Court's novel interpretation of the bona fide error defense effectively nullifies one of the EFTA's core protective provisions, fundamentally altering the liability scheme Congress put in place.

The EFTA strictly limits a consumer's liability for unauthorized transactions. 15 U.S.C. § 1693g(e). "The extent of the consumer's liability is determined solely by the consumer's promptness in reporting the loss . . . ." Official Interpretation of 6(b), 12 C.F.R. § 1005.6(b) *cmnt.* 3.

Consumers may bring EFTA actions against financial institutions for failure to provide reimbursements for unauthorized transfers. 15 U.S.C. § 1693m(a). In such actions, "the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized . . . ." 15 U.S.C. 1693g(b). The EFTA provides recovery to the consumer for any actual damages resulting from violations, statutory damages between $100 and $1,000, and reasonable attorney's fees and costs (if a prevailing party in a successful action). 15 U.S.C. § 1693m(a).

13

Although the EFTA provides an exception to liability for violations that are due to unintentional, "bona fide errors", this affirmative defense is limited and is principally addressed to clerical mistakes. The text of the EFTA bona fide error provision mirrors similar text in other parts of the Consumer Credit Protection Act as well as other similar federal consumer protection statutes. Case law interpreting the scope of this defense follows this precept. For example, mistakes of law, reliance on counsel's review of contractual terms, and factual mistakes as to the nature of the unauthorized transfer are all insufficient for purposes of establishing a bona fide error.

The District Court below did not address the applicability of the bona fide error defense to Chase's obligation to reimburse Appellant for unauthorized transfers pursuant to § 1693g, and instead focused entirely on whether Chase had set up procedures to investigate disputes, as required under § 1693f.

This is error because whether or not a financial institution has reasonable investigation procedures as required under § 1693f has no bearing with regard to a financial institution's obligation to reimburse under § 1693g, which states that "[i]n no event. . . shall a consumer's liability for an unauthorized transfer exceed" the liability caps set forth therein (§ 1693g(a)) and that "[e]xcept as provided in this section, a consumer incurs no liability from an unauthorized electronic fund transfer." 15 U.S.C. § 1693g(e).

14

By conflating its analysis of whether a financial institution has conducted a good faith, reasonable investigation under § 1693f with whether a financial institution is required to reimburse the consumer under § 1693g, the District Court effectively gutted 1693g and, in doing so, committed reversible error.

**II.** The EFTA provides that in a civil for violations, a consumer may recover "any actual damage sustained by such consumer as a result of such failure . . . ." 15 U.S.C. § 1693m(a)(1). Following the principles of statutory construction, these 'actual damages' include emotional distress, just as similar provisions have been construed. *See, e.g., Okocha v. HSBC Bank, USA, N.A.*, 700 F. Supp. 2d 369, 376 (S.D.N.Y. 2010) (in an action brought under, *inter alia*, the EFTA, TILA, and FCRA, the court affirmed the principle that a plaintiff "may be able to recover compensatory damages for emotional distress under [these] federal claims (and his testimony alone could support this) . . . ."), *aff'd*, 488 F. App'x 535 (2d Cir. 2012).

Relying on near identical language in the other sub-statutes making up the Consumer Credit Protection Act, courts have long held that emotional distress damages are recoverable. Courts considering actions brought under the FCRA, FDCPA, FCBA, ECOA, and TILA have all concluded that emotional distress damages are available. Similarly, courts considering other similar consumer protections regimes, including RESPSA and the bankruptcy stay provision, also

have concluded resulting emotional damages may be recovered are available as remedy for violations.

The District Court summarily dismissed Appellant's actual damages as moot, finding that that Appellant could not proceed with her claims for 'actual damages' because Chase had credited her account (by the time of its disposition). However, Appellant clearly asserted her claims for these damages, both in the Amended Complaint and the summary judgment opposition papers, detailing the emotional distress she had suffered from Chase's failure to reimburse her stolen funds.

The District Court also incorrectly concluded that Appellant had abandoned her claims for $8,000 of the unauthorized transfers because they "occurred more than sixty days *before* she contacted the bank." SPA5 (emphasis added). In fact, Chase had denied reimbursement for four unauthorized transfers occurring from April 13 to April 18, 2022, because the transactions took place more than 60 days *after* transmittal of her monthly statement for January 2022.

The delay in notification did not, however, resolve whether Appellant could recover reimbursement for the $8,000. Rather, for Chase to avoid its reimbursement obligation, it had to establish that the April transactions between would not have occurred if Appellant notified it within the 60-day period. § 1693g(a)(2). Chase did not do so. To the contrary, the evidence reflects that after Appellant disputed the transactions as unauthorized, Chase accepted the Authorization from Aspiration

at face value and deemed all of transactions authorized until well after this lawsuit was commenced. At a minimum, whether Chase would have or would not have blocked the April transactions is a question of fact not susceptible to resolution on summary judgment.

For each of the reasons set forth above, the District Court's Opinion and Order granting summary judgment in favor of Chase and dismissing this action should be reversed.

## **ARGUMENT**

### I.    **The Electronic Fund Transfer Act Consumer Liability Cap Is Not Eviscerated by the Bona Fide Error Defense.**

The District Court's novel interpretation of the bona fide error defense effectively nullifies the consumer-banking relationship scheme enacted by Congress in the Electronic Fund Transfer Act (EFTA) in 1978.

Here, the District Court erroneously concluded, as a matter of law, that a financial institution's responsibility to reimburse consumer accounts for unauthorized transfers up to the consumer liability cap does not apply if a financial institution simply adopts and follows error resolution procedures. SPA5. In its dismissal of the Appellant's claims, the District Court does not reference the EFTA's consumer liability protection afforded by 15 U.S.C. § 1693g, much less address how the procedures provided by Chase avoid wrongfully imposing liability on consumers beyond the statutory cap. *See* SPA1-11. Instead, in the District Court's view, if a

17

financial institution adopts errors resolution procedures, it has blanket immunity from any liability for unauthorized transfers from consumer accounts.

The District Court's dismissal of Appellant's claims finds no support in the text, structure, or purpose of the EFTA and Regulation E (the EFTA's implementing regulation). For good reason. The District Court's interpretation effectively negates a financial institution's obligation to reimburse consumer accounts for electronic fund transfers they did not make—undoing the consumer-bank liability framework that has governed the parties' relationship since the passage of the EFTA in 1978.[8]

### A. The EFTA Limits Consumer Liability for Unauthorized Transfers and Provides Consumers with a Remedial Cause of Action If a Financial Institution Fails to Provide Reimbursements for Their Losses

The EFTA was enacted as part of the comprehensive Consumer Credit Protection Act ("CCPA"), Pub. L. No. 95-630 § 2001, 92 Stat. 3641 (1978) (codified as amended at 15 U.S.C. § 1601, et seq.).[9] In enacting the EFTA, Congress stated

---

[8] The District Court's analysis effectively imposes the more bank-friendly liability scheme applicable to unauthorized wire transfers set forth in Article 4A of the Uniform Commercial Code. Pursuant to that regime—which does not apply to any transaction covered by the EFTA (UCC § 4A-108, "Relationship to Electronic Fund Transfer Act")—the general rule is that accountholder bears the loss for unauthorized wires any time the parties have agreed upon a commercially reasonable security procedure and the bank follows it. UCC § 4A-202.

[9] "The broader Consumer Credit Protection Act includes the Truth in Lending Act, 15 U.S.C. §§ 1601-1665e; the Fair Credit Billing Act, 15 U.S.C. §§ 1666-1666j; the Consumer Leasing Act, 15 U.S.C. §§ 1667-1667f; the Credit Repair Organizations Act, 15 U.S.C. §§ 1679-1679j; the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-

that the purpose of the EFTA is to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). "The primary objective, however, . . . is the provision of individual consumer rights." *Id.*

"The Act is essentially a consumer protection statute . . . designed to minimize customer loss due to unauthorized account withdrawals." *United States v. Goldblatt*, 813 F.2d 619, 625-26 (3d Cir. 1987) (citing 15 U.S.C. § 1693g); *see also Mich. First Credit Union v. T-Mobile USA, Inc.*, 108 F.4th 421, 426-27 (6th Cir. 2024) (noting multiple "provisions in the EFTA bolster the conclusion that the purpose of the Act is to benefit consumers, even at the expense of financial institutions.").

To that end, the EFTA limits consumer liability for unauthorized electronic fund transfers. Specifically, 15 U.S.C. § 1693g caps consumer liability, stating in the relevant part, "Except as provided in this section, a consumer incurs no liability from an unauthorized electronic fund transfer." 15 U.S.C. § 1693g(e). The exceptions for consumer liability are as follows:

> A consumer shall be liable for any unauthorized electronic fund transfer involving the account of such consumer only if the card or other means of access utilized for such transfer was an accepted card or other [means] of access and if the issuer of such card, code, or other means of access has provided a means whereby the user of such card, code, or other means of access can be identified as the person authorized to use

---

1681x; the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f; and the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693-1693r." *Rouse v. Law Offices of Rory Clark*, 603 F.3d 699, 706 (9th Cir. 2010).

it, such as by signature, photograph, or fingerprint or by electronic or mechanical confirmation. ***In no event, however, shall a consumer's liability for an unauthorized transfer exceed the lesser of-***

(1) $50; or

(2) the amount of money or value of property or services obtained in such unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected. Notice under this paragraph is sufficient when such steps have been taken as may be reasonably required in the ordinary course of business to provide the financial institution with the pertinent information, whether or not any particular officer, employee, or agent of the financial institution does in fact receive such information.

> *Notwithstanding the foregoing, reimbursement need not be made to the consumer for losses the financial institution establishes would not have occurred but for the failure of the consumer to report within sixty days of transmittal of the statement (or in extenuating circumstances such as extended travel or hospitalization, within a reasonable time under the circumstances) any unauthorized electronic fund transfer or account error which appears on the periodic statement provided to the consumer under section 1693d of this title. . . . .*

15 U.S.C. § 1693g(a) (emphasis added). Essentially, this section of the EFTA renders financial institutions insurers of consumer accounts against losses stemming from unauthorized electronic transactions but shifts responsibility for later losses to consumers where they do not timely give notice and a financial institution establishes that it could have prevented related subsequent unauthorized transactions. Even consumer negligence does not lessen the protection afforded by

20

the EFTA. *See* Official Interpretation of 6(b), 12 C.F.R. § 1005.6(b) *cmnt.* 2 ("Negligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E").

Regulation E further explains the timing and notice requirements:

> **(3) Periodic statement; timely notice not given.** A consumer must report an unauthorized electronic fund transfer that appears on a periodic statement within 60 days of the financial institution's transmittal of the statement ***to avoid liability for subsequent transfers***. ***If the consumer fails to do so, the consumer's liability shall not exceed the amount of the unauthorized transfers that occur after the close of the 60 days and before notice to the institution, and that the institution establishes would not have occurred had the consumer notified the institution within the 60-day period.*** When an access device is involved in the unauthorized transfer, the consumer may be liable for other amounts set forth in paragraphs (b)(1) or (b)(2) of this section, as applicable.

12 C.F.R. § 1005.6(b)(3) (emphasis added).

The Official Interpretations of the periodic statement notice provision clarify the interplay between the consumer liability caps set forth in § 1693g (which include differing timing related to thefts stemming from the theft or loss of access devices, which no party has argued are at issue in this matter):

> 1. **Unlimited liability applies.** The standard of unlimited liability applies if unauthorized transfers appear on a periodic statement . . . . If a periodic statement shows an unauthorized transfer made with a lost or stolen debit card, the consumer must notify the financial institution within 60 calendar days after the periodic statement was sent; otherwise, the consumer faces unlimited liability for all unauthorized transfers made after the 60-day period. The consumer's liability for unauthorized transfers before the statement is sent, and up to 60 days following, is determined based on the first two tiers of liability: up to

21

$50 if the consumer notifies the financial institution within two business days of learning of the loss or theft of the card and up to $500 if the consumer notifies the institution after two business days of learning of the loss or theft.

2. **Transfers not involving access device.** *The first two tiers of liability do not apply to unauthorized transfers from a consumer's account made without an access device.* If, however, the consumer fails to report such unauthorized transfers within 60 calendar days of the financial institution's transmittal of the periodic statement, *the consumer may be liable for any transfers occurring after the close of the 60 days and before notice is given to the institution.* For example, a consumer's account is electronically debited for $200 without the consumer's authorization and by means other than the consumer's access device. If the consumer notifies the institution within 60 days of the transmittal of the periodic statement that shows the unauthorized transfer, the consumer has no liability. However, if in addition to the $200, the consumer's account is debited for a $400 unauthorized transfer on the 61st day and the consumer fails to notify the institution of the first unauthorized transfer until the 62nd day, the consumer may be liable for the full $400.

Official Interpretation of 6(b)(3), 12 C.F.R. § 1005.6(b)(3) *cmnt.* 1-2 (emphasis added). "The extent of the consumer's liability is determined solely by the consumer's promptness in reporting the loss . . . ." Official Interpretation of 6(b), 12 C.F.R. § 1005.6(b) *cmnt.* 3.

Furthermore, "[w]hile the Act requires a consumer to notify her bank of unauthorized transfers within the prescribed 60-day reporting period, a consumer who fails to do so is not automatically held liable for subsequent losses. A consumer may be held liable for unauthorized transfers occurring after the 60-day period only if the bank establishes that those transfers 'would not have occurred but for the

22

failure of the consumer' to timely report the earlier unauthorized transfer reflected on her bank statement." *Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579, 584 (9th Cir. 2021); *see also Exarhos v. JPMorgan Chase Bank, N.A.*, No. 20 C 7754, 2021 U.S. Dist. LEXIS 135292, at *12 (N.D. Ill. July 20, 2021) ("Chase argues that the fact that the unauthorized transfers on the First Chase Account stopped after the Exarhoses' notification confirms that the subsequent transfers would not have occurred had the Exarhoses given timely notice of the October 2019 transfer. However, whether Chase would have prevented these transfers is a factual question not appropriate at this time.").

Should a financial institution fail to provide reimbursements for unauthorized transfers, consumers may bring an action pursuant to the EFTA. Under the general civil liability provision, "any person who fails to comply with any provision of [the EFTA] with respect to any consumer . . . is liable to such consumer." 15 U.S.C. § 1693m(a); *see also Aikens v. Portfolio Recovery Assocs., LLC*, 716 F. App'x 37, 39 (2d Cir. 2017) (section 1693m(a) "provid[es] for individual and class actions against 'any person who fails to comply with any provision of [the EFTA] with respect to any consumer'").[10]

---

[10] The EFTA's civil liability provision distinguishes between the damages generally available to consumers for violations from the enhanced damages that may be available for the error resolution violations. *See* 15 U.S.C. § 1693m(a) ("Except as otherwise provided by this section . . . , any person who fails to comply with any

In such action involving "a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized or, if the electronic fund transfer was unauthorized, then the burden of proof is upon the financial institution to establish that the conditions of liability set forth in [§ 1693g(a)] have been met . . . . ."  15 U.S.C. 1693g(b); *see also Nelipa v. TD Bank, N.A.*, No. 21-CV-1092, 2024 U.S. Dist. LEXIS 106766, at *35-37 (E.D.N.Y. June 17, 2024) (citing § 1693g).  In the action, the consumer may recover any actual damages resulting from the financial institution's failure to comply with the EFTA, statutory damages between $100 and $1,000, and reasonable attorney's fees and costs (if a prevailing party in a successful action).  15 U.S.C. § 1693m(a).

Furthermore, the EFTA provides financial institutions with a safe harbor to avoid liability for their noncompliance *before* a lawsuit is instituted:

> A person has no liability under this section for any failure to comply with any requirement under this subchapter if, prior to the institution of an action under this section, the person notifies the consumer concerned of the failure, complies with the requirements of this subchapter, and makes an appropriate adjustment to the consumer's account and pays actual damages or, where applicable, damages in accordance with section 1693h of this title.

---

provision of this subchapter with respect to any consumer, except for an error resolved in accordance with section 1693f of this title, is liable to such consumer . . . .").

15 U.S.C. § 1693m(e); *see also Cobb v. PayLease LLC*, 34 F. Supp. 3d 976, 984 (D. Minn. 2014) ("That the Act provides for statutory damages — and does not require actual damages to have been suffered — indicates that a plaintiff's cause of action is likely not lost simply because an entity has repaid the inappropriately assessed amounts."); *Hatemi v. M&T Bank Corp.*, No. 13-CV-1103S, 2014 U.S. Dist. LEXIS 76776, at *17 (W.D.N.Y. June 3, 2014) ("To the extent that the EFTA's safe-harbor provision[] might have affected Hatemi's standing, it will not apply here not only because M&T disputes whether any violations occurred but also because it has not finalized its policy changes or reimbursed Hatemi yet.").

### B. The District Court Erred in Holding Error Resolution Protocols Vitiated the EFTA Consumer Liability Cap and Constituted a Bona Fide Error Defense to Reimbursement Liability.

The EFTA provides an exception to liability for violations due to unintentional, bona fide errors. This defense is limited, however, and is principally addressed to clerical mistakes. *Compare Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 587 (2010) (construing the identical language for bona fide errors in the FDCPA, "the statutory phrase is more naturally read to apply to processes that have mechanical or other such 'regular orderly' steps to avoid mistakes . . . .").

In construing the EFTA's bona error defense, the "analysis begins, as it must, with the plain text of" the statute at issue. *Springfield Hosp., Inc. v. Guzman*, 28

25

F.4th 403, 418 (2d Cir. 2022); *see N.Y. Legal Assistance Grp. v. Bd. of Immigr. Appeals*, 987 F.3d 207, 216 (2d Cir. 2021) ("Every exercise in statutory construction must begin with the words of the text").  As set forth in the civil liability subsection:

> a person may not be held liable in any action brought under this section for a violation of this subchapter if the person shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. 1693m(c).  "Thus, to be entitled to the bona fide error defense, Defendants must demonstrate by a preponderance of the evidence that the error at issue was: (1) unintentional; (2) the product of a *bona fide* error; and (3) must have occurred notwithstanding the maintenance of procedures reasonably adapted to avoid the error in question."  *Bazarganfard v. Club 360 LLC*, No. 2:21-cv-02272-CBM-(PLAx), 2023 U.S. Dist. LEXIS 60283, at *27 (C.D. Cal. Apr. 4, 2023).

The text of the EFTA bona fide error provision mirrors similar text in the Fair Debt Collection Practices Act (FDCPA), *see* 15 U.S.C. § 1692k(c), which itself was borrowed from nearly identical language, at that time, in the Truth in Lending Act (TILA), and each of which is part of the Consumer Credit Protection Act.  *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich L.P.A.*, 559 U.S. 573, 589-90 (2010).[11]  As noted by the Supreme Court, "when Congress uses the same language

---

[11] After passage of FDCPA, this bona fide error provision of TILA was amended to include "calculation, computer malfunction and programming, and printing errors." *Compare* 15 U.S.C. § 1640(c) (1976) *with* 15 U.S.C. § 1640(c) (2024).

26

in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005). Further, "when "judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich L.P.A.*, 559 U.S at 590.

Relatively few courts have considered the application of the bona fide error affirmative defense to violations of the EFTA. Those that have done so have interpreted the defense in similar ways to the other parts of the CCPA. For example, mistakes of law or misunderstanding statutory requirements do not suffice as bona fide errors. *See Simone v. M & M Fitness LLC*, 2017 U.S. Dist. LEXIS 54480 (D. Ariz. Apr. 10, 2017) (noting "a mistake of law is not subject to the bona fide error defense" under 15 U.S.C. § 1693m(c) of the EFTA, and finding "despite Defendant's intent, lack of enforcement, and reliance on [a third party's boilerplate contract template], Defendant is not entitled to summary judgment based on a bona fide error defense" for the plaintiff's EFTA claim); *Bazarganfard v. Club 360 LLC*, No. 2:21-cv-02272-CBM-(PLAx), 2023 U.S. Dist. LEXIS 60283, at *33 (C.D. Cal. Apr. 4, 2023) (denying the bona fide error defense to an unauthorized preauthorized transfer based on reliance on counsel's purported good faith review of the contractual terms).

27

Factual mistakes concerning the nature of a transfer (and potential liability for it) are also not a basis for the defense. *See Kelsey v. Pitsch Cos.*, No. 1:13-cv-1296, 2015 U.S. Dist. LEXIS 73441, at \*6 (W.D. Mich. June 8, 2015) (belief that vendor was charging a credit card did not constitute a bona fide error to an unauthorized debit card withdrawal). Nor is the defense applicable where a financial institution adopts policies that explicitly violate provisions of the EFTA. *See Daye v. Cmty. Fin. Serv. Ctrs.*, 233 F. Supp. 3d 946, 1016 (D.N.M. 2017) (bona fide error defense denied where "based on the undisputed facts" it was the lender's "policy to require borrowers to preauthorize debit authorizations as a condition for receiving a loan -- a policy repeated numerous times in the . . . policy manual and conceded to during deposition -- was deliberate and intentional."); *see also Washington v. USAA Fed. Sav. Bank*, Civil Action No. 3:19-cv-00767-MGL, 2020 U.S. Dist. LEXIS 269553, at \*6-9 (D.S.C. July 29, 2020) (rejecting the bona fide error defense using error investigation procedures as applied to unauthorized transfers and holding a financial institution will remain liable for actual damages incurred by the consumer irrespective of the defense).

Even if the defense is applicable, where there are open questions about the knowledge of or intent of the parties, or the procedures employed, including whether they were followed and their adaptability to prevent the errors, courts have held the defense could not be invoked (or could not be invoked in the procedural posture).

28

*See, e.g., Drager v. Bridgeview Bank*, No. 1:10-cv-7585, 2011 U.S. Dist. LEXIS 62861, at *26-28 (N.D. Ill. June 13, 2011) (denying to dismiss on a motion for judgment on the pleadings based on bona fide error, holding "discovery may show that [defendant's] failure to comply with the notice provisions of the EFTA was indeed 'intentional' (as proved through conscious disregard of similar complaints or otherwise)" and "the Court cannot conclude that the 'system' described . . . in a single sentence of [an] affidavit is a system that is 'reasonably adapted to avoid' errors in maintaining the notice required by the EFTA); *Kinder v. United Bancorp, Inc.*, No. 11-CV-10440, 2012 U.S. Dist. LEXIS 140567, at *11-12 (E.D. Mich. Sep. 28, 2012) (in an ATM fee disclosure case, finding that "[w]hether the steps taken after the mistake was discovered and McCrate's failure to not follow up with Kangas to ensure that the notices were replaced is a question of fact that goes to the reasonableness of UBT's procedures. Kinder's motion for summary judgment is denied."); *Boecherer v. Burling Bank*, No. 08 C 1332, 2009 U.S. Dist. LEXIS 111983, at *18-19 (N.D. Ill. Dec. 1, 2009) (denying summary judgment on the defense where "the trier of fact could determine that, despite the testimony that bank officers periodically examined the ATMs, the fact that the bank used double-sided tape to affix the notice, rather than a more permanent adhesive, was unreasonable" as creating "genuine issue of material fact exist[] as to whether the bank maintained procedures reasonably adapted to avoid the fee notice being missing from the

machine"); *Schochet v. Bank of Am., N.A.*, Index No. 652058/2013, 2016 N.Y. Misc. LEXIS 64, 2016 NY Slip Op 30038(U), ¶ 13 n.12 (Sup. Ct., N.Y. Cnty. 2016) ("The Bank does not argue it is entitled to immunity under §§ 1693m(c) & (d) for bona fide error or good faith compliance. This argument would be factual and would preclude summary judgment.").

Nearly all cases where courts have found that the EFTA bona fide error applies involved missing ATM fee disclosure placards where defendants had adopted detailed placard posting policies and followed a monitoring scheme with fidelity. *See, e.g., Cohen v. Capital One, N.A.*, 921 F. Supp. 2d 107, 110 (S.D.N.Y. 2013) (defense applied to the failure to post an ATM fee sticker disclosure following a bench trial); *Drager v. Bridgeview Bank*, No. 1:10-cv-7585, 2012 U.S. Dist. LEXIS 132584, at *19 (N.D. Ill. Sep. 17, 2012) (defense accepted where policy included monthly checking of ATM sticker and replacement); *Singer v. EIntelligence, Inc.*, 55 F. Supp. 3d 1043, 1052 (N.D. Ill. 2014) (defense accepted where ATM fee sticker policy was outlined and included monthly verification); *In re Cardtronics ATM Fee Notice Litig.*, 874 F. Supp. 2d 916, 923 (S.D. Cal. 2012) (defense applicable where policy included affixing ATM stickers with strong epoxy at time of installation and no evidence points to an incentive to remove stickers); *Johnson v. Rustad & Assocs., Inc.*, No. 12-CV-0926 (PJS/SER), 2012 U.S. Dist. LEXIS 170086, at *10 (D. Minn. Nov. 29, 2012) (defense applies where plaintiff

30

did not cast doubt on the policies regarding ATM placard posting); *Sherrill v. Racetrac Petroleum*, No. 4:10-CV-690, 2012 U.S. Dist. LEXIS 204072, at *9 (E.D. Tex. Sep. 30, 2012) (policies adopted showing stickers applied at installation with continued monitoring for compliance sufficient to invoke the defense).

Two additional applications of the bona fide error defense merit discussion as well, though neither addressed the defense's application to § 1693g.

In *Ramirez v. Ltd. Fin. Servs., L.P.*, No. 1:19-cv-02575-CAP-RDC, 2021 U.S. Dist. LEXIS 210849 (N.D. Ga. July 16, 2021), an action pursuant to, *inter alia*, § 1693e of the EFTA (regulating preauthorized transfers), on summary judgment, the court found that a defendant debt collector could invoke the bona fide error defense. *Id.* at *15-24. There, a student loan creditor placed two student loan accounts with the defendant, which belonged to the plaintiff's spouse. *Id.* at *2. The two accounts were grouped together, and plaintiff had authorized recurring payments on the loan accounts on his spouse's behalf. *Id.* at *2-3. Following the initial authorization, the plaintiff's spouse as well as the plaintiff subsequently cancelled the recurring payments. *Id.* at *3-4. However, while the debt collector recorded the recurring payment cancelation, defendant's employee made an entry error and only cancelled the payment for one of the two grouped accounts. *Id.* at *4. Thereafter, a single payment of $79 was debited from the plaintiff's account and credited to the student loan account balance. *Id.* at *4.

The court reviewed the debt collector's extensive compliance regime, including the training and guidance regarding electronic withdrawals and the mandatory procedures to follow in the event of recurring payment cancellation. *Id.* at *8-9 and *21-24. The court found that the mistake was unintentional because the employee, while notating the cancellation, had simply failed to carry it through, despite her training to do so. *Id.* at *24. Essentially, the case involved a human clerical error. *See Ramirez v. LTD Fin. Servs., L.P.*, No. 1:19-CV-2575-CAP, 2021 U.S. Dist. LEXIS 262043, at *19 (N.D. Ga. Sep. 2, 2021) (adopting the Report and Recommendation). Significantly, the intended payee of the recurring payments did in fact receive the payment, benefiting plaintiff's spouse. The court did not address whether the bona fide error defense would have been applicable to a § 1693g claim. Further, the financial institution where the consumer kept his account was not the named defendant.

In *Wheeler v. Fitness Formula, Ltd.*, No. 18 CV 582, 2018 U.S. Dist. LEXIS 194320 (N.D. Ill. Nov. 14, 2018), the court awarded partial summary judgment based on the bona fide error defense as to a claim for improper notice of recurring payment amounts pursuant to § 1693e the EFTA. *Id.* at *1 and *10. In that case, the plaintiff had preauthorized monthly debits to pay for his gym membership. *Id.* at *3-4. After plaintiff added his spouse to his membership, his account was not only debited for the new combined membership cost ($134.95 in total), but for his

single membership cost as well ($79.95) for a period of six months.  *Id.* at *1-4. Through a monthly double-repetitive auditing procedure, which included a comparison of new membership data and intended billing amounts, defendant's customer service caught the error and refunded the wrongfully billed amounts within a day.  *Id.* at *3-6.  Defendant had more than nine prior years of billing data, with no prior instances of double billing.  *Id.* at *6.

On the limited issue of whether the amount that had been double billed to plaintiff (but had been refunded) had been preauthorized by the plaintiff, the court found that the disclosure error was inadvertent, defendant's procedures adequately guarded against the error, and the procedures had adequately remedied the violation prior the commencement of the lawsuit.  *Id.* at *9-10.  Therefore, the court held that the bona fide error defense applied, and the claim for failing to provide notice of the preauthorized amounts for the double-billing could not proceed.  *Id.* at *10.[12]  Again, the violation at issue was not whether reimbursement to a consumer account had to been made in accordance with § 1693g, nor was the financial institution where the consumer held his account a named defendant.

---

[12] Notably, however, plaintiff proceeded with other EFTA claims under § 1693e in this matter based on defendant's billing of return fees and past due amounts, amounts that had not been clearly authorized in plaintiff's membership agreement.  *See Wheeler v. Fitness Formula, Ltd.*, No. 18-cv-00582, 2020 U.S. Dist. LEXIS 55346, at *9-10 (N.D. Ill. Mar. 30, 2020).

In this matter, the District Court did not address the applicability of the bona fide error defense to Chase's obligation to reimburse Appellant for unauthorized transfers in her account pursuant to § 1693g.[13]  Rather, the District Court's entire analysis of the defense is premised on a conflation of the consumer liability cap, 15 U.S.C. § 1693g, with the EFTA error resolution provision, 15 U.S.C. § 1693f.  These are separate, distinct protections providing reimbursement for unauthorized transfers on the one hand, and the process by which alleged account errors must be investigated and resolved (unauthorized transactions are defined as errors within the error resolution provision, not the general definitions section, *see* 15 U.S.C. § 1693a(12) and 1693f(f)(1)).

Multiple courts recognize that violations of these two subsections of the EFTA are separate and create distinct claims.  *See, e.g., Green v. Capital One, N.A.*, 557 F. Supp. 3d 441, 446-47 and 450-51 (S.D.N.Y. 2021); *Trang v. JP Morgan Chase Bank, N.A.*, No. 3:22-cv-01744-HZ, 2023 U.S. Dist. LEXIS 167200, at *11-15 (D. Or. Sep. 19, 2023); *Sparkman v. Comerica Bank*, No. 23-cv-02028-DMR, 2023 U.S. Dist. LEXIS 136485, at *25-31 (N.D. Cal. Aug. 4, 2023); *Cifaldo v. BNY Mellon*

---

[13] Chase's motion for summary judgment sought dismissal of action but made no distinction between the separate 1693g and 1693f violations that had been alleged in the Amended Complaint.  *See* SA79-101.  Appellant's opposition to summary judgment identified the separate EFTA subsections for which Chase faced liability. *See* A595; A605-21.

*Inv. Servicing Tr. Co.*, No. 2:17-cv-00842-JAD-NJK, 2017 U.S. Dist. LEXIS 79079, at *3-12 (D. Nev. May 23, 2017).

By analyzing the bona fide error defense only pursuant to § 1693f, governing error resolution, the District Court's application of the bona fide error defense was fundamentally flawed as to § 1693g claims. It considered only the investigative steps that Chase was required to perform after a customer disputes transactions as unauthorized. The District Court repeats multiple times that the only errors addressed in Chase's procedures were those related to the resolution of errors—not Chase's obligation to reimburse consumers for transactions that were not authorized, nor the ultimate burden of proof allocated to Chase (which was never addressed). SPA6-7; *see also* 15 U.S.C. § 1693g(b) ("the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized . . . .").

There is no support in the statute or the case law for excusing financial institutions from their reimbursement obligations up to the consumer liability cap when they are unable to demonstrate the transactions were authorized by the consumer in the context of § 1693g violations. The consumer liability provision of the EFTA is unequivocal: "Except as provided in this section, a consumer incurs no liability from an unauthorized electronic fund transfer." 15 U.S.C. § 1693g(e); *see also* 15 U.S.C. § 1693g(a) ("In no event, however, shall a consumer's liability for an unauthorized transfer exceed the lesser of . . . .).

35

An application of the bona fide error defense that undoes this express statutory obligation, effectively nullifies the reimbursement scheme that has been in effect since the 1978 passage of the EFTA.

Taking the District Court's approach, even if a financial institution concedes that the transactions at issue were unauthorized, the consumer is not entitled to reimbursement. So long as error investigation procedures have been adopted and followed, no reimbursement need be made to the consumer's account for unauthorized transfers, no matter the amount lost. This turns the essential scheme of EFTA consumer liability protection against unauthorized transactions on its head.

Accordingly, the District Court's Opinion and Order dismissing Appellant's claims pursuant to 15 U.S.C. § 1693g should be reversed.

## II.    Civil Liability for Actual Damages in the EFTA Includes Emotional Damages.

The same principles of statutory construction applicable to the EFTA bona fide error defense apply with equal force to the construction of the meaning of the 'actual damages' provision of the EFTA. As set forth in the civil liability subsection:

(a) Individual or class action for damages; amount of award

Except as otherwise provided by this section and section 1693h of this title, any person who fails to comply with any provision of this subchapter with respect to any consumer, except for an error resolved in accordance with section 1693f of this title, is liable to such consumer in an amount equal to the sum of—

> (1) any actual damage sustained by such consumer as a result of
> such failure;

15 U.S.C. § 1693m(a)(1).

As noted above, the EFTA is one of several sub-statutes making up the Consumer Credit Protection Act ("CCPA"), codified at 15 U.S.C. §§ 1601-1693r. Indeed, many of the provisions within the CCPA overlap, relying upon each other as well as agency regulations promulgated to implement them. *See Edwards v. Wells Fargo & Co.*, 606 F.3d 555, 557 n.7 (9th Cir. 2010) ("The federal statutes are like Russian matryoshka dolls, stacked one within another . . . ."); *Clemmer v. Key Bank Nat'l Ass'n*, 539 F.3d 349, 353 (6th Cir. 2008) ("With the common purpose of each law to protect consumers with respect to financial credit, courts draw upon case law interpreting one statute for persuasive authority for another statute.").

Relying on near identical language in other subparts of the CCPA, courts have long held that emotional distress damages are recoverable in actions under these consumer protection statutes. *See, e.g., Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir. 1995) (in an FCRA action, noting that "the District Court properly recognized that 'actual damages' may include humiliation and mental distress, even in the absence of out-of-pocket expenses[,]" but sustaining the lower court's findings that the damages had not been proven); *Minnifield v. Johnson & Freedman, LLC*, 448 F. App'x 914, 916 (11th Cir. 2011) ("Actual damages under the FDCPA include damages for emotional distress") (citing *Johnson v. Eaton*, 80

37

F.3d 148, 152 (5th Cir. 1996)); *Kohli v. Indep. Recovery Res., Inc.*, No. 17-CV-3154 (RLM), 2021 U.S. Dist. LEXIS 260674, at *11 (E.D.N.Y. Nov. 29, 2021) (holding under "the FDCPA, a plaintiff may recover actual damages for emotional distress."); *Levy v. Law Offices of J. Henry Nierman*, No. 17-cv-4022 (NSR), 2024 U.S. Dist. LEXIS 91124, at *7 (S.D.N.Y. May 20, 2024) ("In the context of an FDCPA claim, actual damages are intended to compensate a plaintiff for out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from defendant's failure to comply with the FDCPA.") (internal citation and quotation omitted); *Stevens v. GFC Lending, LLC*, 138 F. Supp. 3d 1345, 1347 (N.D. Ala. 2015) (holding "emotional and mental anguish . . . constitute actual losses" under ECOA); *Burnstein v. Saks Fifth Ave. & Co.*, 208 F. Supp. 2d 765, 778-79 (E.D. Mich. 2002) (noting "an award of 'actual damages' under the FCBA" may include "distress, embarrassment, and humiliation[,]" but declining to rule definitely as unnecessary to the disposition); *Butler v. Sterling, Inc.*, No. 98-3223, 2000 U.S. App. LEXIS 6419, at *24 (6th Cir. Mar. 31, 2000) ("Given the policy of construing TILA in favor of the consumer, compensation for 'actual damages' could certainly encompass psychic trauma with accompanying physical manifestations in extreme cases[,]" but finding a lack of sufficient evidence in the case before it)

Courts have construed other federal consumer protection regimes allowing for 'actual damages' to encompass emotional damages as well. *See, e.g., McLean v.*

38

*GMAC Mortg. Corp.*, 398 F. App'x 467, 471 (11th Cir. 2010) ("Construing the term 'actual damages' broadly, and based on the interpretations of 'actual damages' in other consumer-protection statutes that are remedial in nature, plaintiffs arguably may recover for non-pecuniary damages, such as emotional distress and pain and suffering, under RESPA."); *Fleet Mortg. Grp. v. Kaneb*, 196 F.3d 265, 269-70 (1st Cir. 1999) ("In responding to Fleet's general challenge to the sufficiency of the damages evidence, we note that emotional damages qualify as 'actual damages' under § 362(h) [the Bankruptcy Stay]. . . . An honest accounting of actual damages under § 362(h) must include the psychological suffering of this eighty-five year old retired widower. We affirm the bankruptcy court's award of damages for mental anguish.").

Applying the above principles, courts have concluded that 'actual damages' under 15 U.S.C. § 1693m(a)(1) of the EFTA include the emotional damages suffered by consumers resulting from EFTA violations, not just the out-of-pocket losses they may have sustained. *See Okocha v. HSBC Bank, USA, N.A.*, 700 F. Supp. 2d 369, 376 (S.D.N.Y. 2010) (in an action brought under, *inter alia*, the EFTA, TILA, and FCRA, the court affirmed the principle that a plaintiff "may be able to recover compensatory damages for emotional distress under [these] federal claims (and his testimony alone could support this) . . . ."), *aff'd*, 488 F. App'x 535 (2d Cir. 2012); *Almon v. Conduent Bus. Servs., LLC*, Case No. SA-19-CV-01075-XR, 2022 U.S.

Dist. LEXIS 55025, at *53-54 (W.D. Tex. Mar. 25, 2022) ("Even if Plaintiffs were required to show an injury beyond these violations of the EFTA and Regulation E, they have adequately alleged the emotional distress that other courts have found to be sufficient in the context of statutory violations.") (citations omitted).

The District Court summarily dismissed Appellant's 'actual damages' as moot, finding that that Appellant's reimbursement of the $46,975 in stolen funds (only obtained *after* this lawsuit was filed) ended her claims for actual damages. Yet, in the Amended Complaint and the summary judgment opposition papers, Appellant repeatedly stressed that her damages included the emotional distress she had suffered from Chase's failure to reimburse her stolen funds.[14]  *See* A46; A634; A638.  Consistent with the principles of statutory construction, like the provisions of 'actual damages' throughout the CCPA and other like federal consumer protection statutory enactments, Appellant's emotional damages should be held to be recoverable as 'actual damages' under the EFTA.

In its dismissal of actual damages, the District Court also concluded that Appellant abandoned "all of her claims relating to the $8,000 in transfers for which

---

[14] Chase did not move to dismiss Appellant's claims for emotional distress damages. As such, the opposition to summary judgment did not include extensive affidavits/declarations.  Nevertheless, Appellant's declaration in opposition sets forth that after Chase removed its provisional credits from her account, Appellant became suicidal, had great difficulty sleeping, lost 20 pounds, and sought out mental health treatment for the first time in her life.  A638.  At trial, Appellant will produce additional corroborating records and testimony.

Chase Bank did not provisionally credit Newman's account." SPA5. The District Court held the claims "fail[ed] as a matter of law because the relevant transfers occurred more than sixty days _**before**_ she contacted the bank." SPA5 (emphasis added); *see also* SPA2 ("Chase Bank did not provisionally credit Newman for $8,000 of the total because disputed transactions totaling that amount had occurred more than sixty days _**before**_ Newman contacted the bank") (emphasis added).

The District Court's analysis was incorrect factually and legally. Following discovery of the unauthorized ACH withdrawals from her accounts, Appellant contacted Chase on April 27, 2022, and disputed the 25 unauthorized transactions. Chase accepted disputes for 21 of the 25 transactions, but at inception denied the last four of the transactions equal to $8,000 (initiated between April 13 and April 18, 2022) as untimely because the transactions took place more than 60 days after transmittal of her monthly statement for January 2022. In apparent accordance with its reimbursement policies, Chase did not provide $8,000 provisional credits to Appellant (or any credits until this lawsuit was instituted). SA4.

The delay in providing notice of the disputed transactions alone does not resolve the issue as to whether Appellant could recover reimbursement for the $8,000 in this action, however.[15] Rather, for Chase to avoid the reimbursement

---

[15] Although Appellant received credits for the out-of-pocket amounts lost, her claims for distress related to Chase's failure to reimburse remain live.

41

obligation under § 1693g, Chase bears the burden to establish that the transactions between April 13 and April 18, 2022, would not have occurred if Appellant notified Chase about the prior unauthorized transactions within the 60-day period. 12 C.F.R. § 1005.6(b)(3) ("If the consumer fails to do so, the consumer's liability shall not exceed the amount of the unauthorized transfers that occur after the close of the 60 days and before notice to the institution, and that *the institution establishes* would not have occurred had the consumer notified the institution within the 60-day period") (emphasis added); *see also* 15 U.S.C. § 1693g (". . . the burden of proof is upon the financial institution to establish that the conditions of liability set forth in [§ 1693g(a)] have been met").

Chase offered no evidence below that it would have blocked the latter Aspiration transactions had Appellant earlier raised her disputes. To the contrary, the record reflects that once Chase received confirmation from Aspiration that Appellant had electronically consented to the transfers between her Chase account and Aspiration, Chase concluded that all transactions made through Aspiration had in fact been authorized by Appellant. SA2; A628; SA6. Chase did not conclude otherwise as to the disputed transactions until nearly a full calendar year later. *See* A640 ("We researched the transaction(s) below and agree it was incorrect. . . . . The credit(s) we provided for the transaction(s) listed below is now finalized."). At a minimum, whether Chase would have or would not have blocked the $8,000 in

transactions is a question of fact that should not have been resolved on summary judgment.

Accordingly, the District Court's Opinion and Order dismissing Appellant's claims should be reversed insofar as it dismissed her claims for actual damages as moot, including her emotional distress damages.

## CONCLUSION

For the reasons set forth above, the District Court's Opinion and Order granting summary judgment should be reversed and this matter remanded for further proceedings.

Dated: December 13, 2024

Respectfully,

*/s/Evan S. Rothfarb*
Evan S. Rothfarb
Daniel A. Schlanger
Schlanger Law Group, LLP
60 East 42nd Street
46th Floor
New York, NY 10165
T: 212-500-6114
F: 646-612-7996
E: erothfarb@consumerprotection.net &
dschlanger@consumerprotection.net

*Counsel for Plaintiff-Appellant*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Local Rule 32.1(a)(4) because this brief contains <u>10,327</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: December 13, 2024

*/s/Evan S. Rothfarb*
Evan S. Rothfarb

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Second Circuit by using the ACMS system. All participants are registered ACMS users and will be served by the ACMS system.


Dated:  December 13, 2024

_/s/Evan S. Rothfarb_
Evan S. Rothfarb

i

**SPECIAL APPENDIX TABLE OF CONTENTS**

**Page**

Opinion and Order of the Honorable Jesse M.
　　Furman, dated June 26, 2024 ................................. SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                     :

SARI E. NEWMAN,               :

                     Plaintiff,     :

                              :        22-CV-6948 (JMF)

          -v-          :

                              :       OPINION AND ORDER

JP MORGAN CHASE BANK, N.A.,   :

                  Defendant.   :

------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        Plaintiff Sari E. Newman had a savings account with Defendant JP Morgan Chase Bank, N.A. ("Chase Bank"). In 2022, $46,975 was transferred out of the account to another financial institution. When Newman discovered the transfers, she contacted Chase Bank to dispute them. After an investigation, Chase Bank credited Newman's account for some, but not all, of the money. It has since returned the rest of the disputed funds (plus interest). In this suit, Newman nevertheless contends that Chase Bank's investigation and initial failure to return the funds violated the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.* Chase Bank now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment, arguing, among other things, that the EFTA's bona fide error defense, which insulates banks from liability for certain unintentional errors, applies. *See* ECF No. 55; *see also* ECF No. 61 ("Def.'s Mem.").[1] The Court agrees. Accordingly, and for the reasons that follow, Chase Bank's motion for summary judgment is GRANTED.

---

[1] Chase Bank's memorandum of law and other documents in this case are currently filed under seal. Below, the Court orders Chase Bank to show cause why these materials should remain sealed.

SPA-2

**BACKGROUND**

The relevant facts are undisputed.  In 2018, Newman opened a savings account with

Chase Bank.  ECF No. 64-1 ("Pl.'s Rule 56.1 Responses"), ¶ 1.  Through twenty-five ACH

transfers occurring between January 19, 2022, and April 18, 2022, $46,975 was transferred from

Newman's Chase Bank account to an account under Plaintiff's name with Aspiration Financial,

LLC ("Aspiration").  *Id*. ¶¶ 4-12.  On April 27, 2022, Newman first contacted Chase Bank to

dispute these transfers on the ground that they were a result of fraud.  *Id*. ¶ 12.  Chase Bank

began an investigation and, on May 4, 2022, issued a provisional credit for $38,975.  *Id*. ¶¶ 16-

20.  Chase Bank did not provisionally credit Newman for $8,000 of the total because disputed

transactions totaling that amount had occurred more than sixty days before Newman contacted

the bank.  *See id*. ¶ 14; *see also* 15 U.S.C. § 1693f(a); 12 C.F.R. § 1005.11(b)(1)(i).

Chase Bank continued investigating Newman's claim and determined that it could not

prove that she had in fact authorized the transfers; accordingly, it was prepared to find in her

favor and credit her account.  Pl.'s Rule 56.1 Responses ¶ 23.  On May 11, 2022, however,

Chase Bank received an ACH Authorization and Agreement form from Aspiration reflecting

Newman's electronic signature, causing Chase Bank to change course.  *See id*. ¶¶ 21-23.[2]  A few

weeks later, on June 9, 2022, Aspiration returned $14,000 to Chase Bank for the transactions that

had occurred between March 4, 2022, and April 5, 2022, and Chase Bank permanently credited

Newman's account in that amount.  *See id*. ¶¶ 24, 26.  On July 18, 2022, Chase Bank notified

Newman that the rest of her claim — for the balance of $24,975 — was denied.  *See id*. ¶ 28.

---

[2]      Another entity, Coastal Community Bank, actually sent the Authorization form to Chase
Bank on behalf of Aspiration.  *See* ECF No. 52 ("Kesterson Decl."), ¶ 21; Pl.'s Rule 56.1
Responses ¶ 21.

SPA-3

On August 15, 2022, Newman commenced this action. *See* ECF No. 1. On November 22, 2022, before Newman filed the operative Amended Complaint, Chase Bank reimbursed her $24,975, plus $3.14 in interest. *See* Pl.'s Rule 56.1 Responses ¶ 30. On February 8, 2023, Chase Bank reimbursed the remaining $8,000, plus $1.21 in interest — purportedly "as a gesture of goodwill even though [Newman] failed to timely notify the bank of the $8,000 in disputed transactions within 60 days." Def.'s Mem. 6; *see* Pl.'s Rule 56.1 Responses ¶ 33. Thus, it is undisputed that Chase Bank has now reimbursed Newman for the entire $46,975 that was transferred from her account to Aspiration. *See* Pl.'s Rule 56.1 Responses ¶ 34.

### LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). Such a dispute qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found*., 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). Critically, however, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval*

SPA-4

*Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [her] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Affidavits submitted in support of, or opposition to, summary judgment must be based on "personal knowledge," must "set out facts that would be admissible in evidence," and must "show that the affiant or declarant is competent to testify on the matters stated." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

## DISCUSSION

The EFTA "provide[s] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund . . . transfer systems." 15 U.S.C. § 1693(b); *see Fischer & Mandell LLP v. Citibank, N.A.*, No. 09-CV-1160 (RJS), 2009 WL 1767621, at *3 (S.D.N.Y. June 22, 2009). The EFTA sets forth a procedure for resolving electronic fund transfer errors, including, as relevant here, when a customer believes her bank transferred money into or out of her account without authorization. *See* 15 U.S.C. § 1693f; *see also id.* at § 1693f(f)(1) (defining "error" to include "unauthorized electronic fund transfer[s]"); *Zarate v. Chase Bank*, No. 22-CV-1178 (AMD), 2023 WL 5956334, at *3 (E.D.N.Y. Sept. 13, 2023). Newman argues that Chase Bank violated the EFTA because it failed to conduct a good faith

investigation and had no reasonable basis to deny her claim regarding the transfers to Aspiration. *See* ECF No. 22 ("Compl."), ¶ 66.  In connection with these alleged violations, she seeks actual damages, statutory damages, treble damages, attorney's fees, and costs.  *See id.* ¶¶ 68-74; *see also* 15 U.S.C. §§ 1693m(a), 1693f(e).

At the outset, two aspects of Newman's claims require little discussion.  First and foremost, there is no dispute that her claim for actual damages is moot as Chase Bank has now fully reimbursed her for the entire $46,975 that was transferred from her account to Aspiration. *See* Pl.'s Rule 56.1 Responses ¶ 34.  Chase Bank does not, however, argue that the case is moot and wisely so, as Newman also seeks statutory damages, treble damages, attorney's fees, and costs.  *See, e.g., Wilner v. OSI Collection Servs., Inc.*, 201 F.R.D. 321, 323 (S.D.N.Y. 2001). Second, Newman does not respond to Chase Bank's argument that all of her claims relating to the $8,000 in transfers for which Chase Bank did not provisionally credit Newman's account fail as a matter of law because the relevant transfers occurred more than sixty days before she contacted the bank.  *Compare* Def.'s Mem. 14-18, *with* ECF No. 64 ("Pl.'s Opp'n"). Accordingly, the Court deems her claims relating to that money to be abandoned.  *See, e.g.*, *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014); *see also, e.g.*, *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 142-44 (2d Cir. 2016).  In any event, they would indeed fail as a matter of law as untimely.  *See, e.g.*, *Zaidi v. JP Morgan Chase Bank*, *N.A.*, No. 19-CV-1080 (DRH), 2021 WL 848864, at *4 (E.D.N.Y. Mar. 5, 2021) (granting summary judgment to the defendant bank on an EFTA claim where it was undisputed that the plaintiff had failed to notify the bank of the alleged error within the sixty-day statutory period).

In any event, Chase Bank is entitled to summary judgment on all of Newman's claims for a different reason: because the bona fide error defense set forth in 15 U.S.C. § 1693m(c)

applies.[3]  Section 1693m(c) "insulates [banks] from liability even when they have failed to comply with certain other governing requirements."  *Ramirez v. LTD Fin. Servs., L.P.*, No. 19-CV-02575 (CAP) (RDC), 2021 WL 5027860, at *7 (N.D. Ga. July 16, 2021), *report and recommendation adopted*, 2021 WL 9598131 (Sept. 2, 2021).[4]  To prevail in asserting the defense, a bank must "show by a preponderance of the evidence that the violation [1] was not intentional and [2] resulted from a bona fide error [3] notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1693m(c); *see Ramirez*, 2021 WL 5027860, at *7.  Assuming without deciding that Chase Bank violated the EFTA in the first instance, the evidence supports each of these elements.  *See, e.g.*, *Wheeler v. Fitness Formula, Ltd.*, No. 18-CV-582 (RWG), 2018 WL 5981849, at *1 (N.D. Ill. Nov. 14, 2018) ("The court need not find that a violation occurred to consider if defendants can successfully assert the bona-fide error defense."); *accord Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 536 (7th Cir. 2005).

Beginning with the third prong, there is no genuine dispute that Chase Bank maintains procedures reasonably adapted to avoid errors such as the one alleged here.  Contrary to Newman's assertion that Chase Bank "gives very little detail [as] to what sort of procedures it

---

[3]    Strictly speaking, Chase Bank's Answer to Newman's Amended Complaint asserted the bona fide error defense under the Truth in Lending Act ("TILA") rather than the EFTA.  *See* ECF No. 24, ¶ 95.  Chase Bank contends that this was "[d]ue to a scrivener's error" and asks the Court to disregard it or allow amendment of the Amended Answer.  *See* Def.'s Mem. 18 n.12.  Newman does not oppose the request and implicitly concedes the lack of any prejudice by asking the Court to consider TILA cases given "the similarities between EFTA and TILA."  Pl.'s Opp'n 24.  Accordingly, the Court will construe the Answer to assert the affirmative defense under the EFTA.  *See, e.g.*, *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350-51 (2d Cir. 2003).

[4]    The EFTA's bona fide error provision "mirrors" the bona fide error provision in the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k(c), "and has been interpreted by federal courts in precisely the same way," *Ramirez*, 2021 WL 5027860, at *6.  Accordingly, in the discussion that follows, the Court relies on cases involving both statutes.

maintains," Pl.'s Opp'n 21, Chase Bank submitted evidence of the step-by-step procedures that are to be followed when a customer disputes a transfer. Specifically, when a customer alleges fraudulent activity, a Chase Bank specialist is assigned to review the claim and tasked with following a "Job Aide" that is designed around the requirements of the EFTA and corresponding regulations. Kesterson Decl. ¶ 4; ECF No. 52-1 ("Job Aide"). Throughout the investigation process, the specialist is required to take notes of developments. *See* Kesterson Decl. ¶ 7; *see also* ECF No. 51-14 ("Newman Investigation Notes"). At the time relevant here, Chase Bank's Job Aide directed specialists to review certain information upon receiving a transfer authorization form from an originating depository financial institution — in this case, Aspiration. Kesterson Decl. ¶¶ 24-26; Job Aide 19-20. The Job Aide instructed a specialist, upon receiving such a form, to consider multiple factors in evaluating whether the transfer appeared to have been authorized, such as the name of the authorizing party, the authorizing party's contact information, other information identifying the authorizing party, and copies of signatures or electronic signatures, and to make a judgment call based on all available information. *See* Kesterson Decl. at ¶ 25; Job Aide 19-20.

This process complies with the EFTA's requirements and is reasonably tailored to investigate potentially unauthorized transfers. *See, e.g.*, *Ramirez*, 2021 WL 5027860, at *8 (finding that targeted internal policies "together with corresponding employee training programs" were evidence of procedures reasonably adapted to prevent unauthorized withdrawals); *see also, e.g.*, *Arnold v. Bayview Loan Servicing*, 659 F. App'x 568, 571 (11th Cir. 2016) (finding procedures based on written materials and trainings sufficient for the bona fide error defense); *Isaac v. RMB Inc.*, 604 F. App'x 818, 820 (11th Cir. 2015) (finding "specifically trained" employees to be a critical part of the defendant's policies and procedures for purposes of

the bona fide error defense). Newman contends that Chase Bank's procedures were insufficient because they did not require calling the customer. *See* Pl.'s Opp'n 5, 22, and 26. But there is no reason to believe that telephone calls to a customer are the only reasonable way to avoid errors. (And, not for nothing, Chase Bank actually did call Newman several times, *see, e.g.*, Newman Investigation Notes 7-9, 11-13, 20, 28, 30, 34, and, in any event, communicated the actions it was taking through letters, *see, e.g.*, Pl.'s Rule 56.1 Responses ¶¶ 13-14, 25-26, 28.) Newman also faults Chase Bank's procedures on the ground that they offer specialists "no criteria on how to evaluate [the relevant] factors." Pl.'s Opp'n 25. But neither the EFTA nor the corresponding regulations, *see* 12 C.F.R. § 205 ("Regulation E"), offer such criteria or dictate the weight that a bank must give to any particular information. And given that each dispute may involve unique circumstances, the fact that the procedures call for the exercise of judgment — and thus leave room for errors — does not render them unreasonable. *See, e.g.*, *Ramirez*, 2021 WL 5027860, at *8 (noting that the defense "does not require [banks] to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution. In short, the relevant procedures need not be foolproof." (cleaned up)).

Turning to the first two prongs, Chase Bank has also shown that its violation (if there was one) was unintentional and a bona fide error, defined as one "made in good faith; a genuine mistake, as opposed to a contrived mistake." *Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350, 1353 (11th Cir. 2009) (cleaned up). The evidence shows that the specialist assigned to investigate Newman's claim followed the protocol set forth in the applicable Job Aide and dutifully maintained notes throughout the investigation. *See* Kesterson Decl. ¶¶ 6-7, 15, 17-20, 23-27; *see generally* Newman Investigation Notes. Significantly, Chase Bank initially concluded that it could not prove that Newman had in fact authorized the transfers and was

prepared to find in her favor and credit her account.  *See* Pl.'s Rule 56.1 Responses ¶ 23.  It was

only when Chase Bank received the ACH Authorization and Agreement form from Aspiration,

which reflected Newman's signature (albeit electronic signature), that Chase Bank changed

course and denied the claim.  *See id.* ¶¶ 21-23.  To its credit, Chase Bank now acknowledges

"that additional documents should have been obtained to establish aithorization [sic]."  Def.'s

Mem. 22*; accord* Kesterson Decl. ¶ 27.  But it is plain that the failure to seek additional

documents and to rely on the electronic signature alone were errors in judgment, not intentional

or contrived mistakes.  In other words, the violation here (if there was one) "occurred not

because of a paucity of procedures reasonably calculated to avoid the error, but because of

human blunder."  *Ramirez*, 2021 WL 9598131, at *6.

Newman's counterarguments fail to persuade.  First, she contends that the bona fide error

defense does not apply to Chase Bank's error because the defense applies only to "clerical"

errors.  *See* Pl.'s Opp'n 24.  But that is incorrect.  The defense applies not only to clerical errors,

but also to "mistakes of fact," which is what occurred here.  *Ramirez*, 2021 WL 5027860, at *8

(citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604-05 (2010)).

Second, she asserts that the defense fails because Chase Bank's actions *leading* to the error were

intentional.  *See* Pl.'s Opp'n 22-23.  That argument also misses the mark, as "an unintentional

act" in this context "is one that lacks 'specific intent' to violate the law.  In other words, a [bank]

must show 'that *the violation* was unintentional, not that the underlying act itself was

unintentional.'"  *Ramirez*, 2021 WL 5027860, at *7 (quoting *Arnold*, 659 F. App'x at 570)

(emphasis added)).  Third, Newman contends that Chase Bank should have been alerted to the

possibility of fraud when, on June 9, 2022, Aspiration returned a portion of the money at issue —

namely, $14,000.  *See* Pl.'s Opp'n 23-24.  But there is no evidence in the record that Aspiration

SPA-10

did so — let alone that Chase Bank knew (or should have known) that it did so — based on suspicions or a finding of fraud.[5]  To the contrary, the evidence shows that it was not until three weeks later, on June 30, 2022, that Aspiration itself learned of the suspected fraud.  *See* ECF No. 56-4, at 3-4.  Finally, Newman points to the fact that the account application for the Aspiration account referenced a telephone number that has no connection to her.  *See* Pl.'s Opp'n 7.  But that document was not obtained by Chase Bank until after this lawsuit was commenced.  *See* ECF No. 67 ("Def.'s Reply"), at 6; ECF No. 56, Exs. 3-4.[6]

## CONCLUSION

In sum, if Chase Bank violated the EFTA in its dealings with Newman at all, its violation was the result of "human agency, which, even when regulated by routine procedures, is bound to

---

[5]    In fact, the evidence suggests that Aspiration returned the $14,000 based on a National Automated Clearinghouse Association rule requiring the return of funds transferred within a certain period before a dispute.  *See* Def.'s Reply 5; Kesterson Decl. ¶ 18; *see also* ECF No. 70.  Whatever the case, the key point is that nothing about the return of the funds led or should have led Chase Bank to conclude that Newman had been the victim of fraud.  Indeed, if Aspiration had returned the funds for that reason one would assume they would have returned *all* of the transferred funds.

[6]    Nor was Chase Bank under any obligation to obtain this document as part of its initial investigation.  In fact, despite Newman's suggestions to the contrary, *see* Pl.'s Opp'n 14, Chase Bank was under no obligation to contact Aspiration as part of its investigation *at all*.  Applicable regulations provide that when, as here, there is no agreement between the two institutions involved in a transfer, a bank is required only to review its own records in response to a dispute.  *See Nero v. Uphold HQ Inc.*, 688 F. Supp. 3d 134, 148 (S.D.N.Y. 2023) ("A financial institution's 'review of its own records regarding an alleged error' satisfies the investigation requirement . . . ." (quoting 12 C.F.R. § 1005.11(c)(4))); *Holmes v. Cap. One, N.A.*, No. 22-CV-0823 (GTS), 2023 WL 6318883, at *8 (N.D.N.Y. Sept. 28, 2023) ("Regulation E states that a bank's review of its own records satisfies its investigative obligations under the EFTA.").

blunder on occasion." *Ramirez*, 2021 WL 5027860, at \*9.  Accordingly, the bona fide error

defense shields Chase Bank from liability and its motion for summary judgment is GRANTED.[7]

One housekeeping matter remains.  Chase Bank filed a letter-motion to seal some of its

exhibits filed alongside their motion papers.  ECF Nos. 46, 47.  The Court granted this letter-

motion only temporarily, pending its decision on the underlying motion.  ECF No. 48.  It is well

established that filings that are "relevant to the performance of the judicial function and useful in

the judicial process" are considered "judicial documents" to which a presumption in favor of

public access attaches.  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).

Significantly, assessment of whether the presumption in favor of public access is overcome must

be made on a document-by-document basis.  *See, e.g.*, *Brown v. Maxwell*, 929 F.3d 41, 48 (2d

Cir. 2019).  Accordingly, **no later than two weeks from the date of this Opinion and Order**,

Chase Bank is ORDERED to show cause in writing, on a document-by-document basis, why the

documents currently filed under seal should remain filed under seal or in redacted form in light

of this Opinion and Order.  Proposed redactions should be "narrowly tailored" to achieve the

aims that justify sealing.  *See, e.g.*, *Brown*, 929 F.3d at 47 (internal quotation marks omitted).

The Clerk of Court is directed to terminate ECF No. 55, to enter judgment for Chase

Bank in accordance with this Opinion and Order, and to close the case.

SO ORDERED.

Dated: June 26, 2024
      New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[7]    In light of the Court's conclusion, the supplemental authority submitted by Newman on
June 24, 2024, *see* ECF No. 72 (citing to *Nelipa v. TD Bank, N.A.*, No. 21-CV-1092 (DH)
(JAM), 2024 WL 3017141, at \*1 (E.D.N.Y. June 17, 2024)), is immaterial.